GARDNER et al. v. TOWN OF CAMERON et al.

(Supreme Court, Equity Term, Steuben County.   November 18, 1911.)

1. Towns (§ 38*)—Contracts—Fraud.
    A contract between a town and a steam roller company for the lease of a such a roller is not fraudulent because the representative of the roller company, in negotiating the contract, paid the per diem fee of the members of the town board to attend a special meeting to authorize the contract and the expenses of the superintendent of highways and the town clerk on a trip to examine the roller.
    [Ed. Note.—For other cases, see Towns, Dec. Dig. § 38.*]

2. Towns (§ 38*)—Contracts—Validity—Construction—Lease or Sale.
    A contract between a steam roller company and a town, whereby the town was to have possession of a steam roller and to pay a rental of $10 per day for 64 days each year for five years, at the end of which time it was to have the right to buy the roller for $1, though called a "lease," was a "sale," considering that all the negotiations between the roller company and the town were for a sale and the life of the roller was many times the period of five years, and hence was invalid under Highway Law (Consol. Laws 1909, c. 25) §§ 49, 50, providing that a town may, out of its own funds, purchase a roller, for which purpose the town board cannot pay more than $500 a year without submitting the matter to a vote, and that the town superintendent, where a town does not own a steam roller, may rent one at a rental not exceeding $10 per day for each day such roller is actually used.
    [Ed. Note.—For other cases, see Towns, Dec. Dig. § 38.*]

3. Towns (§ 38*)—Contracts—Leases.
    A contract between a town and a roller company, whereby the town was to have possession of a steam roller and to pay a rental of $10 per day for 64 days each year for five years, at the end of which time it might buy the roller for $1, even if a lease and not a sale, is invalid under Highway Law (Consol. Laws 1909, c. 25) § 50, providing that the town superintendent may rent a roller at not exceeding $10 per day for each day it is actually used upon the highway; the town binding itself to pay for 64 days whether or not the roller was used that length of time.
    [Ed. Note.—For other cases, see Towns, Dec. Dig. § 38.*]

Action by Jerry L. Gardner and another against the Town of Cameron and another.   Judgment for plaintiffs.

Action by plaintiffs, as taxpayers of the town of Cameron, to set aside a contract between said town and the defendant Buffalo Steam Roller Company, made February 4, 1911, for the leasing to said town of a road roller.

James O. Sebring, for plaintiffs.
Robbins, Brown & Greene, for Town of Cameron and individual defendants.
Charles J. Deckop, for Buffalo Steam Roller Co.

FOOTE, J.   This is a taxpayers' action, brought by authority of section 51 of the General Municipal Law (Consol. Laws 1909, c. 24) to set aside the contract in question as fraudulently made and as illegal and not authorized by law.

[1] The only proof of fraud consists of the fact that the Roller Company's agent in negotiating the contract paid the per diem fee of the members of the town board of $2 each for attending a special meeting of the board to authorize and act upon the contract, and also paid the expenses of the town superintendent of highways and the town clerk on a trip to Buffalo to examine the road roller and verify his representations in respect to it. These payments were of no personal benefit to the individuals. They relieved the town to that extent of legitimate expenses connected with the negotiation of the contract.

The allegations of fraud and corruption are, in my opinion, wholly without evidence to support them. The only debatable question in the case is whether the contract is within the statutory powers of the town officers to make. The theory of the plaintiffs is that the intent of the parties was to provide for a sale of the road roller to the town, and that the formalities required by the statute for sale were not complied with. The claim of the defendants is that it was a leasing, pure and simple, and such as the statute authorized.

[2] The contract is in the form of a lease. The town was to have possession of the roller and to pay a rental of $10 per day for at least 64 days in each year during a period of five years, and, if these payments were made and the town had not previously elected to return the roller and terminate the lease, then at the end of five years the Roller Company agreed to sell the roller to the town for a consideration of $1 in addition to the rental payments already made. But the continuation of the lease was to be optional with the town for each year, and it was to be continued from year to year unless the town gave notice to terminate it on or before February 1st of any year. If such notice was not given, then the lease by its terms continued for another year. The rent was to be payable for each year as the roller was used and fully paid on or before October 31st of that year. The Roller Company was to keep the roller in repair as to all defects of material and workmanship, and the town was to make all other necessary repairs and to properly store and shelter the roller and take good care of it. It had the right to sublet the roller, but agreed to turn over all moneys realized from subletting to the Roller Company. In case the highway fund was insufficient to pay the rental, then the town agreed to pay the difference out of any fund available for the purpose.

These are the essential provisions of the contract. In effect, the town agreed to pay a rental of $640 a year during each year it kept the roller until the end of the fifth year, when it would have paid $3,200 in rent and would become entitled to purchase the roller for $1 additional.

Plaintiffs contend that this contract should be construed as a sale, because the preliminary negotiations showed a desire and intention on the part of the town officials to purchase; because the transaction, if completed, will result in the town becoming the owner of the roller for the sums paid as rental and $1 in addition; and because the form of the transaction indicates a purchase and sale disguised under the form of a lease in order to evade certain statutory limitations upon the power of the town officers to make a purchase.

I am impressed with the conviction that the form of contract employed in this case is an ingenious device designed to evade the statutes and permit the town of Cameron to purchase a road roller at a cost of $3,200 and to pay for it out of the highway improvement fund, one-half (more or less) of which was contributed by the state.

The policy of the Legislature, as disclosed in the statutes, is that this highway improvement fund shall be used exclusively for the repair and improvement of the highways. Incidental to that work the statute (section 50 of the Highway Law [Consol. Laws 1909, c. 25]) permits the town superintendent, where the town does not own a steam roller, to rent one at a rental not exceeding $10 per day for each day "such roller is actually used upon the highways." To that extent only may this highway fund be resorted to or used. But the purchase of a road roller is provided for in section 49, and, if purchased, it is to be paid for by the town out of its own funds, and for that purpose the town board cannot pay a greater amount than $500 per year without submitting the matter to a vote of the town meeting, where authority may be had for paying a larger sum or for issuing bonds of the town, as provided in section 94. The question, therefore, is of importance as affecting the administration in this state of the highway repair and improvement fund, so large a part of which is contributed by the state. If the town of Cameron may by indirection purchase a steam roller and pay for it out of this fund, then all the towns of the state may do the same, and not only evade, but violate, these statutes. Report of Attorney General, 1906, p. 341.

That the so-called "lease" in this case was designed and intended to accomplish the purchase of this road roller and pay for it from the highway fund appears, I think, from the following considerations:

First. All the negotiations between the parties were for a purchase.

Second. The leasing authorized by the statute is to be only for the number of days the roller is actually used upon the highways, while in this case the roller was delivered to the town and to remain in its possession summer and winter during the whole five-year term of the lease, unless the town elected to end it. The town obligates itself to use the roller for 64 days in each year, entirely without reference to the probable requirements of the town in that respect. If its actual requirements in any year were only 20 or 30 days, it must still pay rental for 64 days. It has possession of the roller all the year, and there was no provision for paying rent except for the 64 days, unless the roller was sublet, in which case any rent so derived was to be paid to the Roller Company. It is evident from the form of the machine and the material of which it was constructed that its life and term of usefulness was intended to be and was many times five years; but, under this lease, the five years' rent paid the whole purchase price, showing that the rent was fixed, not with reference to the fair rental value of the roller per day, but so as to produce a sum each year sufficient to pay the whole purchase price in five years. The town had no option to return the roller until the end of the first year, and so was bound at all events to pay $640 the first year. Some part of this $640 was a part payment toward the purchase price and in excess

of the fair rental value for that year; hence, having contributed something toward the purchase price, it became for the interest of the town to complete the transaction, and so there was little or no likelihood of the lease being canceled by the town.

I am satisfied that the intent of the parties was to arrange for purchasing this roller, and that the form of the contract adopted was intended to accomplish that result. If it is proceeded with and fulfilled by the town, it will result in the town becoming the owner of the steam roller at the end of five years, and the purchase price will have been paid out of the highway repair and improvement fund, and thus the plain intent of the statute will be violated.

[3] Moreover, if the instrument is to be construed merely as a lease, still it violates the statute, because the town officers have no power to lease a road roller except for the number of days they have actual use for it upon the highways.

My conclusion is that the contract in question is invalid because it was designed and intended by the parties to accomplish a sale of the road roller to the town of Cameron, the purchase price to be paid in amounts exceeding $500 per year, without submitting the matter to a vote of the town meeting, and to be paid out of the highway repair and improvement fund instead of exclusively from the funds of the town as the statute requires; that the contract is also invalid as a lease, in that it provides for the payment of rent for a fixed number of days not limited to the number the roller may be actually used upon the town highways or fixed with reference to the needs of the highways of the town in that respect.

Plaintiffs are entitled to judgment adjudging the contract illegal and void and for costs of the action.

Findings will be settled upon two days' notice.

